# EXHIBIT E

FILED - SH
GLYNN CO. CLERK'S OFFICE
Filed 7/21/2023 4:17 PM
Accepted 7/24/2023 9:56 AM
CASE # CE23-00918
CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA

| | |
|---|---|
| **THE CITY OF BRUNSWICK, GEORGIA,**<br><br>  Plaintiff,<br><br>v.<br><br>**SOUTHEASTERN EDUCATIONAL SERVICES, INC.,**<br><br>  Defendant. | CE23-00918<br>Case No. _____ |

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

COMES NOW, Plaintiff City of Brunswick (the "City" or "Plaintiff"), and files this its Brief in Support of Motion for an Emergency Temporary Restraining Order, pursuant to O.C.G.A. § 9-ll-65(b), and requests a temporary restraining order and preliminary and permanent injunction prohibiting Defendant from reopening its operations on the Subject Property during the pendency of this case. In further support of its Motion, Plaintiff shows the Court as follows:

### FACTUAL BACKGROUND

In July 2014, the Defendant purchased property located at 1101 Gloucester Street, Brunswick, Georgia 31520 (the "Property"). Compl. ¶ 2. The Defendant assumed the operation as a "homeless day shelter" sometime in 2015 and operated as the same until April 23, 2023. Compl. ¶ 4. The shelter is commonly referred to as "The Well." Compl. ¶ 4. Because the Well did not seek a conditional use permit the facility cannot offer overnight services. Compl. ¶ 5.

In approximately 2018, calls to the City of Brunswick Police Department ("BPD") regarding the Well, the area immediately adjacent to the Well, and homelessness in general

1

increased to an alarming level.[1] Specifically, in 2018, the BPD received 294 calls for service related to the Well with the reported location being 1101 Gloucester Street, Brunswick, Georgia.[2] In 2019, that number increased to 312 calls for service to the Well.[3] The calls decreased in 2020, then sharply spiked to 375 calls for service in 2021 and 524 calls for service in 2022.[4] From January 1, 2023, to April 18, 2023, a span of only 108 days, there were 180 calls for service to the Well location.[5] When averaged out from 2018 to 2022, the City's Police Department received between .8 to 1.4 calls per day to the Well location. In 2023, prior to the closure, the daily call averaged was 1.7.

In addition to the calls related to the Well, a series of violent crimes occurred in the City that involved persons with connections to the Well. Specifically, in 2023 the following events occurred in downtown Brunswick:

1. On July 19, 2022, an armed individual robbed the Subway restaurant located on Newcastle Street in downtown Brunswick. The individual was later apprehended at the Well.

2. On February 27, 2023, a downtown business owner was stabbed in the neck with a shard of glass by an individual that listed 1101 Gloucester Street as his address.

3. On March 26, 2023, an individual with past connections to the Well was arrested and later indicted for home invasion and sexual assault charges related to the rape of a fourteen (14) year old minor.

4. On April 4, 2023, an individual was violently robbed and assaulted with a machete

---

[1] Exhibit "A," call for service data logs from 2018-2023.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

> outside the Well's location at 1101 Gloucester Street.

5. On April 12, 2023, a patron of a downtown restaurant was assaulted by an individual that was later arrested and again the assailant listed her address as 1101 Gloucester Street.

The City, acting by and through its Commission, elected to take action through the passage of ordinances that would address the operations of a homeless facility.[6] City leadership also consulted with the Well to request the facility close in light of the violence in the City and the burden being placed on the City's police and fire department.[7]

The Well closed operations on April 22, 2023, for a period of sixty-five days. Almost immediately, the number of calls plummeted and, more importantly, the number of incidents in the immediate area of the Well decreased. From April 23, 2023, to June 16, 2023, there were only fourteen (14) calls for service.[8] Since the date of closure, the City has not experienced a violent crime wherein the assailant or victim was connected to the Well similar to those listed above.

By and through this Motion, Plaintiff is requesting that the Court issue a Restraining Order seeking a halt to the operations of the Well until a hearing can be held on the merits and a permanent injunction can be obtained.

## ARGUMENT AND CITATION OF AUTHORITY

A. Legal Standard for Temporary Restraining Order

Temporary Restraining Orders ("TRO") have a long-standing history in Georgia law. *Jones v. 2017 Peach Trader Inc.,* 2017 Ga. Lexis 944 (2017). A TRO is properly granted in order

---

[6] City of Brunswick Code Section 16-92, et seq. and 13-652, et seq.; adopted October 5, 2022, and April 19, 2023, respectively.
[7] Exhibit "B," Letter dated April 21, 2023.
[8] Of the 14 calls, 13 were officer-initiated patrol rather than a call from the public.

to maintain the status quo or to prevent irreparable injury pending a hearing on a motion for a temporary restraining order or interlocutory injunction. Specifically, "A trial court has the discretion to grant an interlocutory injunction to preserve the status quo and balance the conveniences of the parties pending final adjudication." *Ebon Found. v. Oatman*, 269 Ga. 340, 344 (1998*)*. A court may restrain a defendant from engaging in further illegal acts for the protection of the public. See, e.g., *Jacobs v. Chatham Cnty.*, 295 Ga. App. 74, 76-77 (2008) (affirming injunction prohibiting defendant from future violations of county health ordinances); *Agri-Cycle, LLC v. Couch*, 284 Ga. 90, 92 (2008) (affirming interlocutory injunction granted to enjoin further violations of the Georgia Water Quality Control Act by defendant at its wastewater treatment plant). As set forth below, a TRO should be granted in this matter.

    B. <u>Plaintiff can Show a Temporary Restraining Order Is Appropriate In This Case to Stop Defendant's Nuisance Activities and Protect the Public</u>.

        1. <u>The City is Likely to Succeed on the Merits of the Case</u>.

Defendant's operations as a nuisance create public safety issues and threaten both public and private properties. From 2018 until the present, the City Police Department has received nearly a call a day to report to the Well and address a variety of complaints. Among the complaints are: problem person, intoxication, fight, trespass, wanted person, theft, assault, terroristic threat, drugs, damage to property, stabbing, robbery, burglary, sex offense and drugs. The City and its residents have also been subjected to violent criminal acts. Those acts, while they have not been fully adjudicated, include charges such as attempted murder, aggravated assault, sexual assault, armed robbery and home invasion.

Additionally, City residents have lodged complaints with the City Commission such that the Well is clearly creating a public nuisance. The City must seek resolution to abate the Well as a nuisance to protect the private and public investment in the areas most at risk for harm from the

Well's operations.

2. <u>A Temporary Restraining Order Will Serve the Public Interest</u>.

The City is burdened with providing for the public health, safety and welfare for City residents. This burden includes the duty to pursue matters that negatively impact the City residents or treat them unfairly. In exercising this duty, the City enacted new ordinances to try and curtail the effects of the Well and to address any future shelters seeking to open in the City. Additionally, the City met with Defendants to negotiate the closure of the Well for sixty-five days.

During the closure period, the number of calls to the City Police Department significantly decreased. Additionally, the merchants located in the downtown corridor report a noticeable difference in the area.[9] The issuance of a temporary restraining order will maintain the current environment to serve the public interest to protect those with interests in the area adjacent to the Well.

3. <u>The Injuries to the Public Outweighs Defendant's Interest in Continuing Operating as a Nuisance</u>.

If the Defendant reopens the Well and operates without a restraining order the injuries to the public will increase, easily eclipsing any interest held by Defendant to operate such a facility on the Property. The granting of injunctive relief will not serve to disrupt the status quo, but rather it would cease Defendant's proposed reopening and abate the public nuisances on the Property.

**CONCLUSION**

In order to prevent the reopening of Defendant's facility and threat to the public safety, health and welfare of the City residents, Plaintiff requests that this Court grant Plaintiff's Motion for Temporary Restraining Order.

---

[9] Reports from downtown merchants, residents and others are attached hereto Exhibit "C."

This 21st day of July 2023.

                                        MCQUIGG, SMITH & CORRY, LLC

                                        /s/ Brian D. Corry
                                        Brian D. Corry
                                        Georgia Bar No. 165557
                                        *Attorney for City of Brunswick*

1612 Newcastle Street, Suite 211
Brunswick, Georgia 31520
(912) 638-1174
brian@mwsclawga.com